IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

**LESLIE KRUIS, t/o/u & t/u/o**
**American Zurich Insurance,**

        Plaintiff,

v.                                                CIVIL ACTION NO.: 3:13-CV-25
                                                  (JUDGE GROH)

**ALLMINE PAVING, LLC,**

        Defendant/Third-Party Plaintiff,

v.

**E. STEWART MITCHELL, INC.,**

        Third-Party Defendant.

## MEMORANDUM OPINION AND ORDER DENYING
## MOTION FOR SUMMARY JUDGMENT

Currently pending before the Court is Defendant Allmine Paving, LLC's ("Allmine") Motion for Summary Judgment, filed on August 29, 2014. ECF 66. Allmine argues there is insufficient evidence that it either breached a duty of care to Leslie Kruis ("Kruis") or caused Kruis' injuries. Kruis responded to the motion,[1] and Allmine filed a reply brief. For the following reasons, the Court **DENIES** Allmine's motion.

### I. Background

**A.    Facts**

On April 2, 2011 at Allmine's Inwood, West Virginia asphalt plant, Kruis was injured

---

[1] In his response, Kruis, by counsel, requested that a hearing be set in this matter. The Court, finding that no hearing is necessary, denies the request.

when he fell off a tanker truck he was attempting to fill with asphalt while in the course of his employment as a driver for E. Stewart Mitchell ("Mitchell").  On the day of the incident, Kruis was intending to fill his tanker at Allmine's facility and then drive it to Frederick, Maryland to unload the asphalt.

To fill a tanker at Allmine's facility, a piece of equipment known as a gantry is lowered onto the top of a tanker truck.  Each driver lowers and raises the gantry manually by pulling a chain, assisted by springs which slow the lowering of the gantry's walkway.  These springs assist the driver in returning the walkway to its upright position.  Once the gantry is lowered, a driver walks across the gantry's walkway to the top of the tanker and fills the tanker with asphalt.  A protective cage surrounds the gantry to permit drivers to remove the lid from the top of the tanker safely.  At some time after the gantry was installed at the Allmine facility, but before Kruis' incident, one of the bars on the protective cage was removed.  On the day Kruis fell from his truck, Allmine did not provide a chain or other device to secure the gantry to the top of the tanker.

Kruis testified at his deposition on July 30, 2013 that on the day of the incident he lowered the gantry over his tanker, walked across the gantry's walkway to the top of the tanker, and attempted to open the tanker's lid. While walking across the gantry's walkway, he could feel it moving or "jiggling."  He had difficulty opening the tanker's lid with his hands, so he used a pry bar to attempt to open it.  While he was opening the lid, Kruis did not notice either the protective cage or the walkway rising up.  When the lid of the tanker opened, Kruis fell.  The parties dispute why the gantry's protective cage did not prevent Kruis' fall.

Kruis testified that the gantry's protective cage spontaneously lifted above him,

leaving him unprotected. He also testified that he fell through the protective cage because one of the bars on the cage had been removed.

### B. Procedural History

On November 13, 2012, Kruis filed a complaint in the United States District Court for the District of Maryland seeking to recover for injuries he sustained when he fell off his tanker. On March 1, 2013, this case was transferred to the United States District Court for the Northern District of West Virginia. On March 29, 2013, Allmine filed a third-party complaint against Mitchell, alleging that Allmine and Mitchell had entered into an express indemnification agreement. Mitchell filed a motion to dismiss, which the Court denied on October 8, 2013. Mitchell filed a counterclaim against Allmine on October 17, 2013. Allmine filed the instant motion for summary judgment on August 29, 2014.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as there is complete diversity between the parties. Kruis is a resident and natural citizen of Virginia. Allmine is a limited liability corporation organized under the laws of Delaware, with a principal place of business in Illinois. Mitchell is a corporation organized under the laws of Maryland, with its principal place of business in Maryland. The amount in controversy is in excess of $75,000.

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict

for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show an absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 323-25; Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted). A motion for summary judgment should be denied "if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions." Phoenix Savs. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir. 1967); see also id. at 253 (noting that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

### III. Discussion

Pursuant to Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938), the applicable law in a diversity case such as this is determined by the substantive law of the state in which a district court sits.

In his response to Allmine's motion for summary judgment, Kruis argues that there

are several genuine disputes of material fact in this case. Kruis avers that these disputes include: whether Allmine was negligent in removing a railing from the gantry's cage; whether his use of a pry bar to open the tanker truck was appropriate;[2] whether he lifted the protective cage in order to gain more leverage when using the pry bar or whether the cage lifted spontaneously; whether there was a standard operating procedure in place at the time of his fall; and what the contents of that standard operating procedure were. Kruis argues that a jury could find that the safety cage on the gantry lifted because there was no chain holding it in place or that it lifted because Allmine failed to inspect it, or both.

Allmine argues there is insufficient evidence of its negligence. Allmine asserts that any potential negligence liability should be nullified because the alleged dangers at issue were obvious to Kruis at the time of his injury. In addition, because this case involves the operation of a piece of commercial machinery, Allmine argues Kruis' failure to introduce expert testimony requires summary judgment. Also, Allmine argues Kruis has two wholly inconsistent theories of liability: one alleging that he fell backward when the gantry's protective cage spontaneously raised, and one alleging that he tumbled over a missing railing on the cage. The Court will address the inconsistent theories first.

### A. Kruis' Inconsistent Theories

In his complaint, Kruis alleges the gantry's protective cage lifted up spontaneously because it "was lacking any device to hold it in place by way of fixation, and the tension on

---

[2] Kruis testified that, shortly before he fell, he used a pry bar to open the lid (or "hatch") on his tanker truck. According to Kruis, the pry bar was provided by Allmine and left on the loading platform. According to Allmine's General Manager, Brett. M. Wolfington, Allmine's safety rules explicitly prohibited using a pry bar to open the hatch. Wolfington testified that if someone were to use a pry bar to open the hatch, he might want to raise the cage to have more room to use the pry bar. This is consistent with Allmine's theory of how Kruis fell–that he lifted the cage himself "to make more room to stomp on the pry bar."

the raising/lowering arms was incorrectly set or lacking." Under that first theory (herein referred to as the "raised gantry" theory), the gantry's protective cage spontaneously lifted several feet, leaving Kruis unprotected and facilitating his fall.

Under his second theory, Kruis alleges he fell out of the cage because part of the cage had a missing railing (the "missing rail" theory). This missing rail was allegedly removed to allow for easier access to a pipe used in the filling process. During his deposition, Kruis said he fell because of the raised gantry, and he unequivocally denied falling because of the missing rail. The following exchange took place:

Q: You fell to the rear of the truck?

A [Kruis]: Yes.

Q: Towards the rear of the truck?

A: Yes.

Q: So the rear of the platform is also to the left in this picture, No. 8, correct?

A: Yes.

Q: The missing bar is to the right?

A: Yes.

Q: You've described falling straight backwards and the cage being up so high that you didn't make any contact with it at all.

A: Right.

Q: So all of that being said, this bar that's missing in No. 8 did not have anything to do with you falling, would you agree with that?

A: Yes.

Q: Because it's just not where you fell?

6

A: Yes.

However, in his responses to Allmine's interrogatories, which were filed after his deposition, Kruis, by counsel, stated: "When Plaintiff lost his balance after the dome lid popped free and he tumbled backwards, the railing on the cage, which would have prevented his fall, was missing. Thus, he fell out of the cage to the ground. Plaintiff had believed the gantry lifted up exposing him, but the photographs produced by the Defendant clearly show a missing rail." This represents the first time Kruis argued Allmine was liable under the missing rail theory. In a different response given to one of Allmine's interrogatories, when asked to describe "in complete detail the manner in which you contend the incident occurred," Kruis wrote: "Plaintiff adopts the testimony he provided at deposition, which describes in great detail how the occurrence took place." In his response to Allmine's motion for summary judgment, Kruis relies predominantly on the raised gantry theory, but also refers to the undisputed fact that a rail had been removed from the cage. He now seems to adopt an "either/or" approach. Therefore, a jury could believe either, both, or neither theory. In its reply brief, Allmine addresses each theory of liability separately, but its arguments for summary judgment are similar as to both.

The Court must address whether Kruis' inconsistent theories are so incredible as to render his version of events, and thus his claim for recovery, insufficient to survive summary judgment. The Court is cognizant of the Supreme Court's statement that "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007). However, it is a fundamental principle that "at the summary

judgment stage, reasonable inferences should be drawn in favor of the nonmoving party." Tolan v. Cotton, 134 S. Ct. 1861, 1868 (2014) (per curiam).

Kruis' inconsistent theories and his arguments in support of those theories are not so egregious as to require disregarding his version of events entirely. In his complaint and his response brief, Kruis references deposition testimony discussing the incident and photographs taken at the scene showing the gantry's protective cage in a raised position after his fall. As to the missing rail theory, Kruis provides photographs of the cage itself and cites to deposition testimony indicating that the rail had been removed from the protective cage while at Allmine's facility. These two theories are contradictory, but assessing credibility and choosing between conflicting versions of events are matters for the jury, not for the court on summary judgment. See Black & Decker Corp. v. United States, 436 F.3d 431, 442 (4th Cir. 2006); Rule v. Brine, Inc., 85 F.3d 1002, 1011-14 (2d Cir. 1996). Thus, this Court cannot make a dispositive credibility determination. See Watson v. Brown, 446 F. App'x 643, 645 (4th Cir. 2011) (unpublished per curiam).

### B. Sufficiency of the Evidence

#### 1. Obviousness

Allmine argues it is not liable for injuries sustained "as a result of dangers that are 'obvious, reasonably apparent, or as well known to the person injured as they are to the owner.'" Bullington v. Lowe's Home Ctrs. Inc., Civil Action No. 5:10-CV-00293, 2011 WL 3843929, at *4 (S.D.W. Va. Aug. 30, 2011) (quoting Burdette v. Burdette, 127 S.E.2d 249, 252 (W. Va.1962), overruled by Hersh v. E-T Enters., Ltd., 752 S.E.2d 336, 349 (W. Va. 2013)). In 2013 the Supreme Court of Appeals of West Virginia abolished the "open and obvious" doctrine, expressly overruling Burdette. Hersh, 752 S.E.2d at 349. So long as

8

it is foreseeable that a hazard may cause harm, there is a duty of care upon the owner or possessor of property to remedy the risk it poses. Id. "Whether the actions employed by the owner or possessor to remedy the hazard were reasonable is a question for the jury." Id. Therefore, Allmine's obviousness argument fails.

### 2. Allmine's Negligence

The standard elements of a negligence claim in West Virginia are duty, breach, causation, and damages. See id. at 341. In terms of premises liability, the Supreme Court of Appeals of West Virginia has abolished the common law distinction between "licensees" and "invitees," finding "that it does not comport with the present condition of our society." Mallet v. Pickens, 522 S.E.2d 436, 439 (W. Va. 1999). Therefore, under West Virginia law, landowners "owe any non-trespassing entrant a duty of reasonable care under the circumstances." Id. at 446. In determining whether a defendant in a premises liability case has met its burden of reasonable care, the trier of fact must consider the following:

> (1) the foreseeability that an injury might occur; (2) the severity of injury; (3) the time, manner and circumstances under which the injured party entered the premises; (4) the normal or expected use made of the premises; and (5) the magnitude of the burden placed upon the defendant to guard against injury.

Id. at 447.

An exhaustive investigation of all the Mallet factors is not required at the summary judgment stage. Hawkins v. U.S. Sports Ass'n, Inc., 633 S.E.2d 31, 36 (W. Va. 2006) (per curiam) ("[T]he Mallet factors were intended to be used by a jury when determining liability." (citing Story v. Worden, 557 S.E.2d 272, 275 (W. Va. 2001) (per curiam))). To ultimately prevail, a "plaintiff must prove by a preponderance of the evidence that the defendant owed a legal duty to the plaintiff and that by breaching that duty the defendant proximately

9

caused the injuries of the plaintiff." Strahin v. Cleavenger, 603 S.E.2d 197, 205 (W. Va. 2004) (citing Webb v. Brown & Williamson Tobacco Co., 2 S.E.2d 898, 899 (W. Va. 1939)). A plaintiff's evidence must "establish a prima facie case of negligence against the defendant in order to warrant jury consideration," however, "it is equally well settled that the necessary showing of negligence may be made by circumstantial as well as direct evidence." Smith v. Edward M. Rude Carrier Corp., 151 S.E.2d 738, 744 (W. Va. 1966) (citations omitted). West Virginia law does not require a plaintiff to prove his entire case in affidavits before trial. Cunningham v. W. Va.-Am. Water Co., 457 S.E.2d 127, 132 (W. Va. 1995) (per curiam), modified on other grounds, Foster v. City of Keyser, 501 S.E.2d 165, 180 n.9 (W. Va. 1997).

Kruis alleges Allmine was negligent in failing to keep the gantry in good and safe working condition, such that "the protective cage would remain down and around the driver, while he or she attempted to remove the lid from the tanker." Kruis argues that, because Allmine failed in this regard, the protective cage was able to spontaneously lift up and leave him exposed to falling. He claims the use of a chain to prevent the protective cage from lifting would have protected him from harm, and that an undated standard operating procedure that Allmine produced "refers to a safety chain to hold the gantry down."[3] Additionally, he claims Allmine failed to perform inspections of the gantry as recommended. As stated above, Kruis sporadically offers a different theory–Allmine acted negligently in

---

[3] On November 3, 2014, Allmine filed a motion in limine seeking to exclude any reference at trial to its standard operating procedure. Allmine argues the standard operating procedure was drafted after Kruis' incident, and therefore any reference to a chain used as a mechanism to lock the gantry in place found in that version of the standard operating procedure represents a subsequent remedial measure under Federal Rule of Evidence 407. Kruis argues there is no evidence the standard operating procedure was altered or amended after his incident and thus the standard operating procedure should not be excluded at trial.

removing a railing on the gantry's protective cage.

To show the existence of genuine disputes of material fact, Kruis cites to deposition testimony–his own, and that of Allmine General Manager Brett Wolfington–together with other exhibits, including photographs and copies of both a standard operating procedure and the gantry's manual. As to the gantry's manual, Wolfington was asked at his deposition if Allmine conducted a monthly inspection of the gantry, which the manual recommends.

> Q: Was there a formal inspection on a monthly basis–
>
> A [Wolfington]: No.
>
> Q: –as recommended?
>
> A: There was not.

Kruis argues that Allmine's failure to inspect is critically important, because it means that the tension on the gantry's springs–which control the lowering and raising of the gantry–had gone unchecked and were thus more likely to malfunction. Regarding the existence of a standard operating procedure in use at Allmine's facility, Kruis again references Wolfington's deposition, wherein the following exchange occurred:

> Q: The safety rule that you just mentioned, where is that published?
>
> A [Wolfington]: Where is it published?
>
> Q: Yeah.
>
> A: We have an SOP at our facility. It's not published anywhere.
>
> Q: So you have a standard operating procedure, and part of that says not to–
>
> A: Raise the cage.

Later in the same deposition, Wolfington was asked whether that standard operating

11

procedure was in existence prior to Kruis being injured. He responded, "I believe so, yes." Wolfington was also asked about photographs that were taken soon after Kruis fell from the tanker, in which the gantry's protective cage is visibly raised above the top of the tanker. "And does that photograph fairly and accurately depict where you saw the cage and the gantry after Mr. Kruis was injured?" he was asked. "Yes," he responded.

In his own deposition, Kruis discussed how the gantry's walkway would "bounce" or "jiggle" as he walked across it, because it was not fastened to the top of his tanker. This deposition included the following exchange:

Q: Can you describe how much of a bounce there was?

A [Kruis]: It was, it just wasn't tight. It wasn't tight, like when you put it down, if you take a step, it would jiggle.

Q: So it wasn't connected to the top of the tanker, it wasn't latched to the top of the tanker?

A: Not at that time. I think now there's been changes made from what I've been told.

Q: So at the time–I'm just trying to kind of narrow down the magnitude. So it wasn't connected?

A: Right.

In light of the facts detailed above, summary judgment is inappropriate. Kruis has demonstrated that a genuine dispute of material fact exists as to each element of negligence likely to be contested at trial. The evidence is sufficient to find Allmine owed Kruis a duty of reasonable care under negligence and premises liability principles. This same evidence forms the basis for genuine disputes from which a reasonable jury could find Allmine breached its duty of care. The missing rail was removed from the protective

cage while the gantry was in Allmine's possession. The manual for the gantry recommended monthly inspections, but this recommendation was ignored. Testimony and photographs indicate that the gantry was unsecured, that it was in a raised position after Kruis fell, and that its protective cage was missing a rail. And a standard operating procedure may or may not have required that employees affix a chain to the protective cage to keep drivers safe, but none was provided.

Allmine argues that this evidence amounts to "layers of speculation and conjecture," without any real proof of Allmine's negligence. But even if much of a plaintiff's evidence includes mere speculation, when viewed in a light most favorable to the plaintiff a jury could still credit certain statements and find negligence. McNeilly v. Greenbrier Hotel Corp., 16 F. Supp. 3d 733, 740 (S.D.W. Va. 2014) (denying summary judgment in a hotel bathroom slip and fall case because "viewing the evidence in the light most favorable to [the plaintiff], a jury could credit her statement that she found residue of cleaning supplies in the bathtub and find that such residue contributed to her fall"). Taking all inferences in Kruis' favor, there are genuine disputes concerning whether Allmine breached its duty of care.

Facts essential to determining causation are also disputed. The Supreme Court of Appeals of West Virginia observes the principle that a "breach of a duty owed, by itself, is not actionable, unless there is also sufficient evidence from which the jury may find by a preponderance of the evidence that such negligence is a proximate cause of the injury." Louk v. Isuzu Motors, Inc., 479 S.E.2d 911, 923 (W. Va. 1996). It is well established that proximate cause is a jury question to be decided upon the totality of the evidence. Arnazzi v. Quad/Graphics, Inc., 621 S.E.2d 705, 708 (W. Va. 2005) (per curiam). Courts should be careful to defer to the jury when different conclusions may be drawn from the facts
13

presented, as "questions of proximate cause are often fact-based issues reserved for jury resolution." Stewart v. George, 607 S.E.2d 394, 398 (W. Va. 2004) (per curiam) (quoting Mays v. Chang, 579 S.E.2d 561, 565 (W. Va. 2003) (per curiam)). Kruis has provided evidence, as detailed above, from which a reasonable jury could find that Allmine's negligence was the proximate cause of his injuries.

Although the amount of Kruis' damages will be contested at trial, Allmine does not dispute that Kruis did suffer damages. Accordingly, as to those elements of negligence likely to be contested at trial, Kruis has demonstrated that a genuine dispute of material fact exists. At the summary judgment stage, the nonmoving party is "entitled . . . to have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, all internal conflicts in it resolved favorably to him, the most favorable of possible alternative inferences from it drawn in his behalf; and finally, to be given the benefit of all favorable legal theories invoked by the evidence so considered." Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Upon motion for summary judgment, a court is not tasked with determining whether the plaintiff will succeed at trial, only if sufficient evidence exists to establish any genuine issue of material fact. Therefore, summary judgment is inappropriate in this case.

### 3. Absence of Expert Testimony

Allmine argues Kruis cannot prove negligence because he has not introduced any expert testimony in support of his claim that problems with the gantry–a piece of commercial machinery–led to his injuries. Allmine asserts that information concerning the operation of a gantry is plainly outside the knowledge of lay people and therefore expert testimony would be necessary for a jury to find Allmine negligent. Whether expert

14

testimony is necessary to assist the jury in any given case depends upon "a variety of factors readily apparent only to the trial judge." Krizak v. W. C. Brooks & Sons, Inc., 320 F.2d 37, 42 (4th Cir. 1963).

The Supreme Court of Appeals of West Virginia has "never held that a respondent must, in order to defeat a motion for summary judgment, submit affidavits of an expert." Cunningham, 457 S.E.2d at 132. In Cunningham, the Supreme Court of Appeals reversed a lower court's decision granting summary judgment. Id. at 452. The plaintiffs argued the defendant negligently installed and maintained a water main near the plaintiffs' home. Id. at 452-53. The water main ruptured and several thousand gallons of water were released onto the plaintiffs' property. Id. The defendant argued summary judgment was appropriate, in part because the plaintiff had failed to introduce expert testimony regarding causation. Id. at 455. In holding that expert testimony is not an absolute requirement under West Virginia law, the court found that conflicting affidavits submitted by the parties were sufficient to establish a genuine issue of material fact. Id.; see also Adkins v. Slater, 298 S.E.2d 236, 242 (W. Va. 1982) (per curiam) (holding that expert testimony is not required to establish the standard of care or to show a breach of that standard in a case concerning negligence in the mobile home moving industry), modified on other grounds, Foster v. City of Keyser, 501 S.E.2d 165, 180 n.9 (W. Va. 1997).

In Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 414-16 (3d Cir. 1999), the Third Circuit Court of Appeals found a plaintiff's non-expert evidence sufficient to survive summary judgment, where the plaintiff alleged negligence involving a chicken processing machine. The plaintiff in Padillas was injured while washing the machine when his hose became tangled and his arm was drawn into an unguarded edge of the machine's rotating

blade. Id. at 414. A district court granted the defendant's motion for summary judgment, finding that expert testimony was necessary in order to show the machine was defective. Id. at 414-16. In reversing the district court, the Third Circuit held: "because this case is at the summary judgment stage, it is premature to rule out that testimony and pictures may enable the jury to clearly see the construction of the machine and the manner of its use, rendering expert evidence unnecessary." Id. at 416.

Here, as in Padillas, Kruis' allegations under the raised gantry theory concern the operation of commercial machinery, but the dangers posed by that machinery may be readily apparent to a lay jury. Much like the plaintiff in Padillas, Kruis has proffered testimony and photographs that could enable a jury to see the construction of the gantry and the manner of its use. The photographs Kruis provides show the gantry's walkway and protective cage in a raised position immediately after he fell, and testimony indicates that the walkway was unsecured and prone to movement during the filling process. It would be premature to hold that a jury could not find Kruis' evidence sufficient without the aid of expert testimony.

Similarly, no expert testimony is necessary for a lay juror to understand the missing rail theory. In Salem v. U.S. Lines Co., 370 U.S. 31, 34-37 (1962), the Supreme Court found that expert testimony was not required when the plaintiff, a lookout on the S.S. United States, alleged negligence for failure to provide railings or other safety devices on a crow's-nest platform. The plaintiff had provided certain evidence, including testimony and photographs of the crow's nest, which the Court found sufficient to allow the jury to determine whether proper marine architecture required railings. Id. at 34-37. The Court held that expert evidence is not necessary when "all the primary facts can be accurately

16

and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training, experience, or observation in respect of the subject under investigation." Id. at 35 (quoting U.S. Smelting Co. v. Parry, 166 F. 407, 415 (8th Cir.1909)); accord District of Columbia v. Shannon, 696 A.2d 1359, 1365-66 (D.C. Cir. 1997) (ruling facts of a child's playground injury could be submitted to a negligence trial jury without expert testimony, as it does not require "expert knowledge of playground equipment to find that with the handrail of a playground slide missing" a child could place her hand directly on a siderail near an uncapped hole and be injured).

As in Salem, Kruis has provided evidence, including testimony and photographs, from which a jury could find in his favor. The alleged dangers posed by Allmine's removing the railing from the protective cage are not outside the common knowledge or experience of lay jurors.

It is not an inherently complex proposition that Kruis could have fallen under or out of a negligently maintained protective cage. The presence of a piece of commercial machinery in a negligence lawsuit does not necessarily render that suit incapable of being understood by lay people without expert assistance. Accordingly, summary judgment is inappropriate.

### IV. Conclusion

For the foregoing reasons, the Court **DENIES** the Defendant's Motion for Summary Judgment.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** December 2, 2014

GINA M. GROH
UNITED STATES DISTRICT JUDGE